## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| Said El Hamdani,<br><br>Plaintiff,<br><br><br>v.<br><br><br>University of New Mexico, a Public University, Stephen Burd, Individually and in his Official Capacity as an agent of the University of New Mexico,<br><br>Defendants. | Case No.   1:23-cv-66<br><br><br>Judge<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND** |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Said El Hamdani ("Plaintiff" or "Mr. El Hamdani") is a U.S. citizen of Moroccan national origin residing in Albuquerque, New Mexico, and an alumnus of the University of New Mexico ("UNM"). He brings this suit alleging national origin and race discrimination in violation of Title VI of the Civil Rights Act of 1964 ("Title VI").

### I.        INTRODUCTION AND BACKGROUND

1. In January of 2020, Mr. El Hamdani continued his studies in pursuit of his Master's degree in Information Systems and Assurance, with a concentration in cybersecurity, from UNM's Anderson School of Management.

2. Mr. El Hamdani chose this specific degree path with hopes of using his skills to serve both his community and his country after graduation.

3. Through his studies, Mr. El Hamdani learned about the UNM Information Assurance

Scholarship for Service (the "SFS Scholarship"). The SFS scholarship fit well with Mr. El Hamdani's professional goals, and would help alleviate the financial strain of being a full-time student while also caring for a family.

4. The successful scholarship candidate had to meet the following requirements:  (1) have a specific Bachelor's degree, as enumerated in the SFS Scholarship information; (2) have applied for or be admitted to a UNM Master's program with an information assurance or cybersecurity focus; (3) have an interest in national security challenges; (4) be a U.S. citizen or permanent resident; (5) be able to apply for and receive a high level security clearance; (6) be willing to relocate if needed; and (7) be willing and able to work in the Federal CyberCorps for at least two years following graduation.

5. Mr. El Hamdani satisfied all scholarship requirements.

6. And, with excellent academic credentials and an impressive record of participation and service in university programs, he felt he was a strong candidate.

7. As a U.S. citizen with a completely clean record, Mr. El Hamdani had no concerns about his ability to obtain a security clearance when the time came.

8. It came as a great surprise to him to later learn that UNM and its employees chose to decide this issue themselves, instead of leaving that to the government's experts.

9. Mr. El Hamdani can only presume this was based solely on his race and national origin.

10. On February 28, 2020, after applying for the SFS scholarship, Mr. El Hamdani sat for a scholarship interview with Professor Burd and Alex Seazzu.

11. Professor Burd requested Mr. El Hamdani's wife accompany him at the interview, a request not made in advance nor set out in the requirements for the scholarship.

12. As detailed below, Professor Burd asked the pair many questions about Mr. El Hamdani's

national origin and ties to his home country of Morocco, including how often he visits, what family members reside there, and what his family does for a living.

13. Professor Burd made comments about the Arabic language and inquired about the couple's religious beliefs – they answered that they are Muslim. He also referenced 9/11, then expressed concern that Mr.El Hamdani would not be able to obtain a security clearance because he is Moroccan, Muslim and Arab.

14. Professor Burd asked many other personal questions how the family spends their time, how they met, and whether his wife travelled to Morocco as well.

15. None of these questions bore on Mr. El Hamdani's competence or ability to perform his job after graduation.

16. After this interview, Professor Burd sent Mr. El Hamdani an email informing him that Professor Burd would not offer him the SFS Scholarship. In his email, Professor Burd explained that "[t]he primary reason for this decision is my assessment that there is a significant risk that you will be unable to obtain a high-level security clearance."

17. Mr Burd's notes, produced during the administrative process in this matter, identify the root of this concern as Mr. El Hamdani's "ties to foreign nationals" (his family in Morocco) and his "frequent travel" (his travel home to see his family every few years).

18. Professor Burd later added on a single allegation of academic dishonesty as additional justification for the scholarship denial, even though his own emails, contemporaneous notes and the relevant timeline reveal this late-breaking secondary explanation lacks credibility.

19. The law vests specific federal agencies and agents with the discretion to determine who receives security clearances.

20. Professor Burd is not a representative of these agencies.

21. Professor Burd has no authority to make security decisions and demonstrates no qualifications or training vesting him with the authority to do so.

22. Nonetheless, he presumed the right to do exactly that, directly tying his unqualified assessment to Mr. El Hamdani's national origin and other protected characteristics.

23. Professor Burd is an educator, bound by Title VI and its anti-discrimination principles. Professor Burd cannot legally perform his professorial duties in a discriminatory manner, granting or denying benefits based on his students' membership in protected classes.

24. Based on the facts set forth in this Complaint, Mr. El Hamdani brings this action under Title VI, alleging discrimination on the basis of race and national origin.

## II.   THE PARTIES

25. Plaintiff Said El Hamdani is a United States citizen of Moroccan national origin residing in Albuquerque, New Mexico. He graduated from the University of New Mexico with a B.S. in Business Administration in July 2020 and an M.S. in Information Systems and Assurance, with a concentration in cybersecurity in December 2021. Mr. El Hamdani currently works as an Information Systems Security Engineer supporting the Air Force Nuclear Weapons Center at Kirkland Air Force Base.

26. Defendant University of New Mexico ("UNM") is a publicly funded university located in Albuquerque, New Mexico; it is a governmental body under applicable law.

27. Defendant Professor Stephen Burd ("Professor Burd" or "Defendant Burd") is a Professor Emeritus of the Anderson School of Management at UNM; at all relevant times, Professor Burd acted as an agent and employee of UNM.

### III.  JURISDICTION AND VENUE

28. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this case arises under the laws of the United States. Plaintiff brings his claims pursuant to Title VI of the Civil Rights of 1964 (42 U.S.C. § 2000d).

29. Venue is proper in the United States District Court for the District of New Mexico, under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this cause of actions occurred in Bernalillo County, New Mexico.

### IV.  FACTS

*A.     Background*

30. Plaintiff Said El Hamdani is an American citizen of Moroccan national origin who immigrated to the United States in 2012.

31. Mr. El Hamdani is also a practicing Muslim.

32. Mr. El Hamdani resides in Albuquerque, New Mexico.

33. Mr. El Hamdani is a two-time graduate of the University of New Mexico. In July 2020, He graduated with a B.S. in Business Administration and a concentration in Management Information Systems.  In December 2021, he graduated with an M.S. in Information Systems & Assurance, with a concentration in Cybersecurity. He obtained a 3.9 GPA in both programs.

34. Mr. El Hamdani currently works as an Information Systems Security Engineer supporting the Air Force Nuclear Weapons Center at Kirtland Air Force Base.

35. To perform his current job, Mr. El Hamdani applied for and successfully obtained an Active Top Secret security clearance (obtained in July of 2021).

36. Mr. El Hamdani did not encounter any issues in obtaining this clearance.

37. In addition to his job as an Information Systems Security Engineer, Mr. El Hamdani currently

teaches two cybersecurity classes at Northern Virginia Community College, as an adjunct professor.

38. Mr. El Hamdani has no criminal background, history of mental health issues, or other factors that would pose a barrier to obtaining a security clearance.

**B.**    ***The Scholarship Application Process***

39. During the spring 2020 semester, Mr. El Hamdani applied for the UNM SFS Scholarship, as discussed above.

40. Prior to applying, Mr. El Hamdani spoke with Professor Burd regarding his eligibility for the scholarship. Professor Burd indicated that Mr. El Hamdani appeared qualified.

41. The SFS Scholarship required a successful applicant to possess the following attributes: (1) have, or be soon to obtain a qualifying bachelor's degree, with a 3.2 or higher GPA; (2) have applied for or be admitted to a UNM Master's program with an information assurance or cybersecurity focus; (3) have an interest in national security challenges; (4) be a U.S. citizen or permanent resident; (5) be able to apply for and receive a high level security clearance; (6) be willing to relocate if needed; and (7) be willing to work in the Federal CyberCorps for at least two years following graduation

42. Mr. El Hamdani satisfied each of the requirements listed above.

43. Mr. El Hamdani submitted a letter of intent, resume, official transcripts, references and other relevant documentation in support of his application.

44. Mr. El Hamdani also submitted several letters of recommendation.

45. After reviewing Mr. El Hamdani's application, Professor Burd scheduled Mr. El Hamdani for an interview.

46. In February 2020, Professor Burd interviewed Mr. El Hamdani.

47. Professor Burd specifically requested that Mr. El Hamdani's wife, Nidia Leija, accompany him to the interview.  Because of that request, she did.

48. During this interview, Professor Burd repeatedly asked questions and made comments about Mr. El Hamdani's national origin and religion, as well as the Arab/Muslim world in general.

49. Professor Burd asked Mr. El Hamdani whether he still has family in Morocco, what various members of his family do for a living, and whether Mr. El Hamdani travels to Morocco to see his family.

50. Mr. El Hamdani answered each of these questions truthfully, informing Professor Burd that he does occasionally travel home to see family and visit his home country.

51. Professor Burd also asked Ms. Leija about her own family background, and asked whether she travels to Morocco with her husband to visit his family.

52. Professor Burd made comments during this interview about the Middle East, Muslims, Arabs and 9/11.

53. Professor Burd expressed his belief that Mr. El Hamdani would have trouble getting a security clearance because he is Moroccan, Arab, and Muslim.

54. Both Mr. El Hamdani and Ms. Leija found it strange that Professor Burd asked so many personal questions rather than focusing on factors relevant to Mr. El Hamdani's career qualifications and academic background.

55. They also both were surprised and taken aback by Professor Burd's comments relating to Mr. El Hamdani's national origin, religion and racial identity.

56. Professor Burd did not ask Mr. El Hamdani any questions about academic dishonesty or any similar issues during the interview process.

57. Following this interview, Professor Burd purports that he continued his investigation into each

of the scholarship applicants.

58. Upon information and belief, this investigation included interviews and communications with faculty members that had taught or otherwise engaged with each of the scholarship applicants, including Mr. El Hamdani.

59. Early on Friday, April 10, 2020 at 6:30 a.m., Professor Burd sent Mr. El Hamdani an email denying him the scholarship.

60. Professor Burd identified in this email that "[t]he primary reason for this decision is my assessment that there is a significant risk that you will be unable to obtain a high-level security clearance . . . and thus meet SFS internship and/or career service requirements."

61. This explanation surprised Mr. El Hamdani, as he knew that there was nothing in his background that would preclude him from obtaining a security clearance.

62. Mr. El Hamdani also knew that Professor Burd was not vested with the authority to make a decision on his potential clearance.

63. Professor Burd identified no other reasons for his decision in this email rejecting Mr. El Hamdani for the scholarship.

64. Professor Burd's self-identified reason, in combination with the questions and comments expressed during the interview, led Mr. El Hamdani to reasonably believe that Professor Burd's decision was discriminatorily based upon Mr. El Hamdani's national origin, including his continued ties to his country of origin, his perceived racial identity, and his religion.

## C.   *The Administrative Complaint Process*

65. In October 2020, Mr. El Hamdani discussed his concerns regarding Professor Burd's actions and the scholarship process with his Department Chair Mary Margaret Rogers.

66. In December 2020, Mr. El Hamdani met with a representative from UNM's Compliance,

Ethics and Equal Opportunity Office ("CEEO").

67. On February 1, 2021, Mr. El Hamdani confirmed he wanted to move forward with a formal investigation.

68. On March 10, 2021, UNM sent Mr. El Hamdani a confirmation of allegations.

69. On March 12, 2021, attorney Christina Jump contacted UNM on Mr. El Hamdani's behalf and informed CEEO that she represents Mr. El Hamdani.

70. On May 3, 2021, Mr. El Hamdani, by and through his representation, provided UNM with a witness list.

71. CEEO conducted its own internal investigation, which upon information and belief included interviewing witnesses and compiling documentary evidence.

72. CEEO acquired documentary evidence, including a spreadsheet entitled "Application Materials[,]" which catalogs applicants' qualifications for the SFS Scholarship. Upon information and belief, Professor Burd created and provided this spreadsheet.

73. For Mr. El Hamdani, the spreadsheet's "Comments" section includes the following notation: "Negative reference comments+foreign travel+overseas family+significant clearance risk."

74. The "foreign travel" references Mr. El Hamdani's occasional travel back to Morocco, including to see his family and visit his country of origin.

75. The "overseas family" notation relates to Mr. El Hamdani's family's continued presence in Morocco.

76. Plaintiff has no knowledge what the "negative reference comments" notation references.

77. Professor Burd made no reference to any negative comments in his email rejection of Mr. El Hamdani, nor did Professor Burd ever ask Mr. El Hamdani about any negative comments.

78. After Mr. El Hamdani filed his administrative Complaint, Professor Burd claimed for the first

time that an allegation of academic dishonesty factored into his decision.

79. The academic dishonesty allegation occurred after Mr. El Hamdani's interview with Professor Burd.

80. Professor Burd alleges that during the course of his follow-up interviews regarding Mr. El Hamdani he discovered that one of Mr. El Hamdani's professors had accused him of sharing code.

81. During one of his courses, Mr. El Hamdani's professor noticed that several students turned in very similar code. He questioned Mr. El Hamdani, who admitted that he wrote and shared the code with his classmates. Mr. El Hamdani was unaware that any other student had turned in the work as their own.

82. Mr. El Hamdani's professor proposed disciplinary action consisting of (1) receiving a 0 on the assignment at issue; and (2) an overall reduction in Mr. El Hamdani's course grade of 2%.

83. Mr. El Hamdani agreed to these terms, and his professor closed the matter.

84. Although Professor Burd asserted during the administrative process that this incident motivated his decision to deny Mr. El Hamdani the scholarship, he did not ask Mr. El Hamdani any questions about it or follow up with Mr. El Hamdani on it in any way.

85. Mr. El Hamdani's records show that the applicable timeline makes Professor Burd's consideration of the allegation of academic dishonesty prior to denying him the scholarship nearly impossible.

86. Mr. El Hamdani's emails show that the communication between himself and the professor who asked about the code in question occurred late in the evening of April 8, 2020.

87. Professor Burd was not a part of those communications, nor was he copied on them.

88. Professor Burd sent his email denying Mr. El Hamdani the scholarship at 6:30 a.m. the morning

of April 10, 2020.

89. Therefore, in order for the allegation of academic dishonesty to have played any role in Professor Burd's decision, he would need to have coincidentally contacted Mr. El Hamdani's professor on April 9, 2020, discovered the code-sharing allegations, confirmed that it constituted academic dishonesty, made his decision and then communicate that decision to Mr. El Hamdani – all in the course of one business day.

90. Professor Burd presented no evidence supporting that hypothetical timeline during the investigation of Mr. El Hamdani's administrative Complaint.

91. This timeline leads to the reasonable inference that the allegations of academic dishonesty did not factor into Professor Burd's decision when he emailed Mr. El Hamdani the denial early on the morning of April 10, 2020.

92. The spreadsheet Professor Burd produced during the administrative investigation does not identify any allegations or consideration of academic dishonesty.

93. Professor Burd never followed up with Mr. El Hamdani to inquire about the allegation of academic dishonesty.

94. Upon information and belief, when a Department chair at UNM (Professor Mary Margaret Rogers) contacted Professor Burd after Mr. El Hamdani informed her of his concerns about discrimination, Professor Burd reiterated that his primary concern was that Mr. El Hamdani had family scattered all over the world.

95. Professor Burd continued to emphasize during the administrative process, in addition to his late additional claim of considering an allegation of academic dishonesty, that Professor Burd's main concern centered on his belief that Mr. El Hamdani would not be able to obtain a security clearance.

96. Professor Burd did not dispute that his concerns regarding the security clearance were based on Mr. El Hamdani's nation of origin and ongoing familial ties there.

97. Professor Burd is bound by Title VI's anti-discrimination principles during that process.

### D.    The Administrative Decision

98. At the conclusion of the CEEO process, UNM found that it could not determine whether Professor Burd violated University policy, and the hearing officer identified the lack of a developed record and any live testimony as significant factors.

99. Under UNM's procedures, only the complainant himself may conduct direct examination of his witnesses, and only the attorney or representative may conduct cross examination. Complainants cannot call opposing witnesses to testify.

100.    Mr. El Hamdani did not call any witnesses due to the limitations created by the structure of the administrative process.

101.    Professor Burd did identify several witnesses, but they each chose not to testify.

102.    Both parties had the right to make opening and closing statements. Mr. El Hamdani did so. Professor Burd did not.

103.    The CEEO Hearing Officer therefore had no live record on which to make a determination.

104.    The UNM's Hearing Officer's final decision repeatedly cited to this dearth of live testimony.

105.    The decision recognized that "Complainant's assertions that Respondent made comments about Muslims, Arabs, and the 9/11 attacks are circumstances from which a decision maker could infer discriminatory motivation." But the Hearing Officer ultimately concluded there was insufficient evidence to make an adverse determination based on the lack of live testimony.

106.    The decision also explained that "Respondent's alleged comments about Muslims and

Arabs are problematic, however, and could form the basis for using legitimate reasons as a pretext for denying an employment or academic opportunity based upon a protected category." But the Hearing Officer again concluded there was insufficient evidence in the record to reach an adverse finding.

107.   Although UNM's Hearing Officer determined Professor Burd did not violate university policy, the decision makes clear that the lack of a live record contributed significantly to that conclusion.

108.   As a result of the discrimination Mr. El Hamdani suffered, he experienced significant mental and emotional distress.

109.   Mr. El Hamdani additionally lost opportunities to network in his field, build connections and advance his career prospects.

110.   Mr. El Hamdani experienced additional financial strain as a result of the denial of the scholarship.

## V.      CLAIM FOR RELIEF: Violation of Title VI of the Civil Rights Act of 1964
### (Against Defendants Stephen Burd and UNM)

111.   Mr. El Hamdani incorporates the above Paragraphs by reference as if fully set forth herein.

112.   As a Muslim of Moroccan national origin, Mr. El Hamdani is a member of a protected class.

113.   Mr. El Hamdani met all of the stated requirements for the SFS Scholarship, including the ability to obtain a high-level security clearance.

114.   Mr. El Hamdani experienced disparate treatment on the basis of his national origin when, upon information and belief, he was denied the opportunity for the SFS Scholarship based on

Defendants' and their agents' determination Mr. El Hamdani could not obtain a security clearance because of his Moroccan heritage, including the religion (Islam) associated with his national origin, and his continued ties to his home country.

115.   Mr. El Hamdani experienced disparate treatment on the basis of his race when, upon information and belief, he was denied the opportunity of the SFS Scholarship based on Defendants' and their agents' determination that his racial identity made him unlikely to successfully obtain a security clearance.

116.   Upon information and belief, the recipient of the SFS Scholarship was not a member of either of Mr. El Hamdani's protected classes.

117.   Professor Burd set forth the Title VII National Security Exception as "evidence" during the administrative stage, and his counsel articulated Professor Burd believed Mr. El Hamdani would be denied a security clearance based on a national security determination.

118.   Professor Burd was never Mr. El Hamdani's employer, nor is he an agent or employee of a federal agency vested with qualifications to make security clearance determinations.

119.   Title VII has no reference to this lawsuit.

120.   Title VI contains no "national security exception."

121.   Professor Burd is not a qualified person to make security clearance decisions.

122.   Professor Burd is an academic professor, charged with administering the education of his students in compliance all Title VI anti-discrimination obligations.

123.   Although qualified federal employees charged with making national security determinations are not bound by Title VI, Professor Burd unequivocally is.

124.   As a result of the Defendants' discriminatory conduct, Mr. El Hamdani suffered emotional distress, including severe anxiety and depression stemming from fear he would be unable to

succeed in his chosen field as a result of his race and national origin.

125. Mr. El Hamdani suffered the loss of scholarship resources that would have assisted in his ability to pay for school and care for his family, and reduced the amount of his student debt.

## VI. CLAIM FOR RELIEF: 42 U.S.C. § 1981

126. Plaintiff El Hamdani incorporates by reference the preceding paragraphs and the factual allegations contained therein.

127. Under 42. U.S.C. § 1981, all persons within the jurisdiction of the United States are entitled to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

128. Furthermore, under 42 U.S.C. § 1981, all persons are protected from impairment of the right to make and enforce contracts.

129. Professor Burd acted wrongfully and in violation of Section 1981 by denying Mr. El Hamdani the SFS scholarship, when he concluded that Mr. El Hamdani would be unable to obtain a high-level security clearance due to his national origin.

130. Professor Burd's denial of the SFS scholarship, due to Mr. El Hamdani's ties to family in Morocco and his "frequent travel" to Morrocco, constitutes a denial of Mr. El Hamdani's scholarship application due to his country of origin, his perceived racial identity, and his religion in violation of Section 1981.

131. Defendant Burd interfered with Mr. El Hamdani's right to make an employment contract because of discriminatory animus, based on Mr. El Hamdani's race and/or national origin.

132. Defendant Burd unlawfully interfered with and violated Mr. El Hamdani's contractual rights to employment, in violation of 42 U.S.C. §1981.

133. Defendant Burd's actions resulted in harm to Mr. El Hamdani, including his loss of income,

loss of promotional opportunities, reputational harm and other financial damages.

### VII.   DEMAND FOR TRIAL BY JURY

Plaintiff Said El Hamdani demands a trial by jury on the claims set forth herein.

### VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Said El Hamdani prays that this court enter an order:

134.   Awarding compensatory damages to Plaintiff for the mental anguish incurred as a result of Defendants' discriminatory actions;

135.   Awarding compensatory damages to Plaintiff for the emotional pain, suffering and humiliation incurred as a result of that Defendants' discriminatory actions;

136.   Awarding punitive damages for the Defendants' violation of Plaintiff's federally protected rights and the resulting harm;

137.   Awarding compensatory damages in the amount of SFS Scholarship award;

138.   Awarding Plaintiff his reasonable attorneys' fees and costs of this action; and

139.   Awarding such other relief as this Court deems appropriate and other damages to which he may be entitled, including nominal damages, emotional distress, and lost opportunities.

### IX.   JOINT AND SEVERAL LIABILITY

All Defendants are jointly and severally liable for any damages assessed herein.

Respectfully submitted this 23rd day of January, 2023.

*/s/ Christina A. Jump*
Christina A. Jump
TX Bar No.00795828
Constitutional Law Center for Muslims in America
100 North Central Expy, Ste. 1010
Richardson, TX 75080
Tel: (972) 914-2507
Fax: (972) 692-7454
cjump@clcma.org
